UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

CAROL ZARYCKI,                       :

                    Plaintiff,       :
                                         02 Civ. 6236 (LAP)(HBP)
     -against-                       :
                                         MEMORANDUM OPINION
MOUNT SINAI/NYU HEALTH,              :    AND ORDER

                    Defendant.       :

----------------------------------X

          PITMAN, United States Magistrate Judge:


I.   Introduction


          Plaintiff moves, pursuant to Fed.R.Civ.P. 15(a), to

amend her complaint to add claims under the Employee Retirement

Income Security Act of 1974 ("ERISA"),[1] as amended 29 U.S.C. §§

1001, et seq., the New York State Human Rights Law ("NYSHRL"),

N.Y. Exec. Law §§ 290 et seq., the New York City Human Rights Law

("NYCHRL"), N.Y. City Admin. Code §§ 8-102 et seq., and to

recover attorney's fees and costs.  Plaintiff also seeks to add

---

[1] Plaintiff brings two claims under ERISA § 510, 29 U.S.C. §
1140, for interference and retaliation (Proposed Amended
Complaint annexed to Memorandum of Law in Support of Plaintiff's
Reply to Defendants' Opposition to Her Motion for Leave to Amend
the Complaint ("Prop. Amend. Compl."), Docket Item 26, ¶¶ 127-33,
140-43).  Although § 510 protects employees exercising their
rights under an employee benefit plan from interference and
retaliation, plaintiff here does not appear to be alleging any
conduct that is expressly prohibited by the statute.  However,
since defendants raise no issue concerning these claims, I do not
address them.

as defendants UnumProvident Corporation ("Unum") and the Mount Sinai Medical Center Long Term Disability Plan (the "Plan") and to substitute defendant Mount Sinai/NYU Health with its member organizations, The Mount Sinai Medical Center and The Mount Sinai Hospital.[2]  For the reasons set forth below, the motion is granted in part and denied in part.

II.  Facts

The Proposed Amended Complaint alleges the following facts; I assume the allegations to be true for purposes of this motion.  Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697, 699-700 (2d Cir. 1994); Da Cruz v. Towmasters of N.J., Inc., 217 F.R.D. 126, 128 n.1 (E.D.N.Y. 2003); Binder v. Nat'l Life of Vt., 02 Civ. 6411 (GEL), 2003 WL 21180417 at *2 (S.D.N.Y. May 20, 2003).

Plaintiff was employed by Mount Sinai and was a participant in the Plan (Prop. Amend. Compl. ¶¶ 5, 10).  Unum is an insurance company that "exercised discretionary authority and

_____

[2]The original complaint named only Mount Sinai/NYU Health as a defendant.  Defendants' memorandum of law opposing this motion answers for The Mount Sinai Hospital, The Mount Sinai Medical Center and The Mount Sinai Medical Center Long Term Disability Plan, but not Unum (Memorandum of Law in Support of Mount Sinai's Opposition to Plaintiff's Motion for Leave to Amend the Complaint ("Def. Memo."), Docket Item 22, at 3 n.1).  For simplicity, The Mount Sinai Hospital, The Mount Sinai Medical Center and The Mount Sinai Medical Center Long Term Disability Plan will collectively be referred to as "defendants."

responsibility in the administration and management of the Plan" and is also a fiduciary with respect to the Plan (Prop. Amend. Compl. ¶ 13, 14).  In 1997, plaintiff was diagnosed with breast cancer and underwent a mastectomy (Prop. Amend. Compl. ¶ 20).  In July 1999, plaintiff took a short term leave of absence because she was experiencing "chronic and disabling symptoms due to medical complications from breast cancer" (Prop. Amend. Compl. ¶¶ 21, 22).  Plaintiff returned to work September 20, 1999 but her "breast cancer impairments worsened" (Prop. Amend. Compl. ¶ 23).

In September 1999 and from June through September 2000, plaintiff requested that defendants grant her an accommodation such as working part-time, working from home or taking FMLA leave (Prop. Amend. Compl. ¶¶ 24-26, 30, 32, 35-39).  Specifically, plaintiff made such a request during a July 2000 meeting with Caryn Tiger from the defendants' Labor Relations department and Michael Pastier, plaintiff's supervisor (Prop. Amend. Compl. ¶¶ 19, 32-33, 36).  At that meeting, plaintiff noted to Pastier that two younger employees had been granted similar accommodations (Prop. Amend. Compl. ¶ 34).  However, she was not granted any accommodation, and Pastier suggested she apply for disability (Prop. Amend. Compl. ¶¶ 26, 34).

In September 2000, while waiting for defendants' approval for FMLA leave, plaintiff's condition further worsened and she was unable to work (Prop. Amend. Compl. ¶ 37).  On

3

September 19, 2000 plaintiff submitted a "FMLA health
certification" and a claim for Short Term Disability ("STD")
benefits (Prop. Amend. Compl. ¶¶ 38, 39).  On September 20, 2000,
plaintiff received a letter stating that her position was being
eliminated and that plaintiff's employment was being terminated
(Prop. Amend. Compl. ¶ 41).  Accordingly, September 20, 2000 was
plaintiff's last date of "active employment" under the Plan
(Prop. Amend. Compl. ¶ 42).

       After the September 20, 2000 termination, Tiger told
plaintiff that her termination had been a "mistake" and that she
would look into plaintiff's employment status and eligibility for
STD and Long Term Disability ("LTD") benefits (Prop. Amend.
Compl. ¶ 43).  Defendants did not respond to plaintiff's
inquiries regarding these matters (Prop. Amend. Compl. ¶ 45).

       On May, 21, 2001, plaintiff submitted an application
for LTD benefits to defendants (Prop. Amend. Compl. ¶ 46).
Defendants refused to process the LTD claim throughout the period
from May 2001 through May 2003 (Prop. Amend. Compl. ¶ 47).
During this two year span, defendants were uncooperative and
provided conflicting information to plaintiff and Unum including
the following:  (1) on November 13, 2001, defendants sent a fax
to plaintiff representing that defendants still employed
plaintiff; (2) in November 2001 defendants stated they were not
processing plaintiff's LTD claim because defendants had decided

4

that plaintiff had been terminated as of July 24, 2001,
retroactively and, therefore, they no longer had any obligation
to process the LTD claim; (3) on December 24, 2001, defendants
sent a fax to plaintiff stating that plaintiff's retroactive date
of termination was July 24, 2001 (Prop. Amend. Compl. ¶¶ 49-50,
53).  As a result of these inconsistent actions by defendants,
plaintiff submitted her LTD claim directly to Unum on December
18, 2001 (Prop. Amend. Compl. ¶ 52).

        In May 2003, defendants finally agreed to process
plaintiff's LTD claims because they "believed [they] had
successfully coerced [p]laintiff into agreeing to a small
settlement for her pending employment claims" (Prop. Amend.
Compl. ¶ 56).  However, defendants then provided Unum with an
incorrect date -- July 25, 1999 instead of September 20, 2000 --
for plaintiff's last date of active employment (Prop. Amend.
Compl. ¶ 57).  On August 19, 2003, plaintiff received Unum's
denial of her LTD claim; the denial incorrectly noted that July
25, 1999 was the date of last active employment instead of
September 20, 2000, and that plaintiff had submitted her LTD
claim on December 18, 2001 instead of May 21, 2001 (Prop. Amend.
Compl. ¶¶ 58, 59).  Despite plaintiff's requests, defendants did
not provide the correct last date of plaintiff's employment to
Unum until October 2003, and this issue was not completely
corrected until January 2004 (Prop. Amend. Compl. ¶¶ 63, 64, 70,

72-73).  On November 11, 2003, plaintiff appealed the August 19, 2003 denial of her claim (Prop. Amend. Compl. ¶ 66).  On February 13, 2004, Unum notified plaintiff that her LTD claim was again denied (Prop. Amend. Compl. ¶ 75).

Plaintiff also alleges that defendants wronged her in other ways.  First, plaintiff claims that defendants failed to inform her about her rights to continued health insurance coverage after she was terminated (Prop. Amend. Compl. ¶ 54).  Second, plaintiff claims that on September 24, 2003, plaintiff requested a copy of the Plan document and Summary Plan Description ("SPD") from Mount Sinai, the "named Plan Fiduciary and Plan Administrator" (Prop. Amend. Compl. ¶ 62).  Defendants produced the SPD, but, according to the plaintiff, have not, to date, produced the Plan document (Prop. Amend. Compl. ¶ 62).

Plaintiff filed her EEOC Charge on or about March 19, 2002 (Prop. Amend. Compl. ¶ 15).  This EEOC Charge, which included an attached narrative, was later attached to the original complaint (<u>see</u> EEOC Charge annexed to Complaint, Docket Item 2).

III.  Motion to
      <u>Amend Complaint</u>

  A.  <u>Applicable Standards</u>

        The standards applicable to a motion to amend a
pleading are well settled and require only brief review.  Leave
to amend a pleading should be freely granted when justice so
requires.  Fed.R.Civ.P. 15(a); <u>Foman v. Davis</u>, 371 U.S. 178, 182
(1962); <u>Dluhos v. Floating & Abandoned Vessel, Known as "New</u>
<u>York"</u>, 162 F.3d 63, 69 (2d Cir. 1998); <u>Gumer v. Shearson, Hamill</u>
<u>& Co.</u>, 516 F.2d 283, 287 (2d Cir. 1974); <u>Aniero Concrete Co. v.</u>
<u>New York City Constr. Auth.</u>, 94 Civ. 9111 (CSH), 1998 WL 148324
at *7 (S.D.N.Y. Mar. 30, 1998), <u>aff'd</u> <u>sub</u> <u>nom.</u>, <u>Aetna Cas. & Sur.</u>
<u>Co. v. Aniero Concrete Co.</u>, 404 F.3d 566 (2d Cir. 2005).
"Nonetheless, the Court may deny leave if the amendment (1) has
been delayed unduly, (2) is sought for dilatory purposes or is
made in bad faith, (3) the opposing party would be prejudiced, or
(4) would be futile."  <u>Lee v. Regal Cruises, Ltd.</u>, 916 F. Supp.
300, 303 (S.D.N.Y. 1996), <u>aff'd</u>, 116 F.3d 465 (2d Cir. 1997); <u>see</u>
<u>Ellis v. Chao</u>, 336 F.3d 114, 126-27 (2d Cir. 2003); <u>Montefiore</u>
<u>Med. Ctr. v. Am. Prot. Ins. Co.</u>, 00 Civ. 3235 (LTS), 2003 WL
21108261 at *1 (S.D.N.Y. May 14, 2003); <u>Am. Home Assurance Co. v.</u>
<u>Jacky Maeder (Hong Kong) Ltd.</u>, 969 F. Supp. 184, 187-88 (S.D.N.Y.
1997).

A proposed amended complaint is futile when it fails to state a claim.  See Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990) ("Although Fed.R.Civ.P. 15(a) provides that leave to amend should be given freely when justice so requires, where, as here, there is no merit in the proposed amendments, leave to amend should be denied."); Mina Inv. Holdings Ltd. v. Lefkowitz, 184 F.R.D. 245, 257 (S.D.N.Y. 1999); Parker v. Sony Pictures Entm't, Inc., 19 F. Supp.2d 141, 156 (S.D.N.Y. 1998), aff'd in pertinent part, vacated in part on other grounds sub nom., Parker v. Columbia Pictures Indus., 204 F.3d 326 (2d Cir. 2000); Yaba v. Cadwalader, Wickersham & Taft, 931 F. Supp. 271, 274 (S.D.N.Y 1996); Prudential Ins. Co. of Am. v. BMC Indus., Inc., 655 F. Supp. 710, 711 (S.D.N.Y. 1987) ("[A]lthough leave to amend should be freely given, it is inappropriate to grant leave when the amendment would not survive a motion to dismiss.") (internal quotation marks and citation omitted).  "The Proposed Amended Complaint may therefore be scrutinized as if defendant's objections to the amendments constituted a motion to dismiss under Fed.R.Civ.P 12(b)(6)."  Journal Publ'g Co. v. Am. Home Assurance Co., 771 F. Supp. 632, 635 (S.D.N.Y. 1991).

The Court of Appeals has repeatedly noted that the trial court has "broad" discretion in ruling on a motion to amend.  Local 802, Associated Musicians v. Parker Meridien Hotel,

145 F.3d 85, 89 (2d Cir. 1998); <u>Krumme v. WestPoint Stevens Inc.</u>, 143 F.3d 71, 88 (2d Cir. 1998).

      B.  Addition and Substitution
         <u>of Parties</u>

Plaintiff's motion seeks to add Unum and the Plan as defendants and substitute The Mount Sinai Hospital and The Mount Sinai Medical Center for the original defendant, Mount Sinai/NYU Health.  "Although Rule 21, and not Rule 15(a) normally governs the addition of new parties to an action, the same standard of liberality applies under either rule."  <u>FTD Corp. v. Banker's Trust Co.</u>, 954 F. Supp. 106, 109 (S.D.N.Y. 1997) (internal quotation marks and citations omitted); <u>see</u> <u>Banco Central Del Paraguay v Paraguay Humanitarian Found., Inc.</u>, 01 Civ. 9649 (JFK) (FM), 2003 WL 21543543 at *2 (S.D.N.Y. July 8, 2003).  The proposed addition of Unum and the Plan and substitution of other Mount Sinai entities is not unduly delayed or prejudicial, and has not been shown to be made in bad faith or futile. Accordingly, the motion to add Unum and the Plan as defendants and substitute The Mount Sinai Hospital and The Mount Sinai Medical Center for the original defendant is granted.

C.   Defendants' Arguments Disputing
     Facts Alleged in the
     <u>Proposed Amended Complaint</u>

         Defendants challenge several of plaintiff's proposed
claims -- namely, plaintiff's claims alleging ADA retaliation,
denial of FMLA benefits, failure to provide plaintiff notice of
her COBRA benefits and violation of ERISA based on breach of
fiduciary duty, failure to pay benefits, interference with ERISA
rights, failure to provide the ERISA summary plan description and
plan document and retaliation -- as futile by claiming that at
least one of the allegations necessary to support the claim are
untrue.

         Defendants' argument is deficient as a matter of law.
"A proposition . . . that is of universal acceptance . . . is
that for purposes of the motion to dismiss, (1) the complaint is
construed in the light most favorable to the plaintiff, (2) its
allegations are taken as true, and (3) all reasonable inferences
that can be drawn from the pleading are drawn in favor of the
pleader."  5B Charles Allen Wright & Arthur R. Miller, <u>Federal</u>
<u>Practice & Procedure</u> § 1357, at 417 (3d ed. 2004); <u>see</u>
<u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508 n.1 (2002)
(stating that on motion to dismiss, court must accept the
allegations in the complaint as true); <u>Davis ex rel. LaShonda D.</u>
<u>v. Monroe County Bd. of Educ.</u>, 526 U.S. 629, 633 (1999) (same).
Because I must accept the allegations in the complaint as true,

10

defendants' attempts to establish futility by simply arguing that the allegations are untrue must fail.

Defendants also argue that both retaliation claims are insufficient because, in essence, plaintiff failed to plead them with the required specificity (Def. Memo. at 9-10 ("A plaintiff alleging retaliation must establish a causal connection between the protected activity and the adverse employment action in order to establish a prima facie case."), 19 (stating that the claim "alleging retaliation under ERISA should be dismissed for failure to state a cause of action since the Plaintiff has not plead this claim with the required specificity")).

Fed.R.Civ.P. Rule 8(a)(2) requires simply "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.  Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake."  Swierkiewicz v. Sorema N.A., supra, 534 U.S. at 513 (emphasis added).  A retaliation claim is not an exception to this rule and does not need to be alleged with specificity. Timothy v. Our Lady of Mercy Med. Ctr., 03 Civ. 3556 (RCC), 2004 WL 503760 at *5 (S.D.N.Y. Mar. 12, 2004) (holding that plaintiff's discrimination retaliation claim does not have to meet a "'rigid pleading standard'" to withstand a motion to dismiss), quoting Swierkiewicz v. Sorema N.A., supra, 534 U.S. at

512; see also Racker v. St. Bonaventure Univ., 04-CV-00125C
(JTC), 2005 WL 1522797 at *3-4 (W.D.N.Y. June 28, 2005) (applying
same analysis and conclusion as Timothy); 5 Charles Allen Wright
& Arthur R. Miller, Federal Practice & Procedure § 1217, at 241,
245 (3d ed. 2004) ("The short and plain requirement applies to
all cases; consequently, suggestions that more detailed pleadings
should be required in certain classes of cases are inappropriate
. . . .") (citations omitted).  Thus, defendants' contention that
plaintiff must plead her retaliation claims with specificity is
erroneous, and plaintiff's motion add these claims to the
complaint is granted.

   Defendants make no other argument concerning
plaintiff's claims alleging denial of FMLA benefits, failure to
provide plaintiff notice of her COBRA benefits and violation of
ERISA based on failure to pay benefits, interference with ERISA
rights, failure to provide the ERISA summary plan description and
plan document and retaliation.  Plaintiff's motion is, therefore,
granted to the extent it seeks to assert these claims.  With
respect to plaintiff's claims alleging ADA retaliation and
violation of ERISA based on breach of fiduciary duty, defendants
do make additional arguments that are discussed below.

D.  ADA Claim: Failure to Accommodate,
    Denial of Equal Terms and Conditions
    of Employment and Wrongful Termination[3]

        Plaintiff claims that defendants "intentionally
discriminated against Plaintiff on account of her disability in
violation of the Americans with Disabilities Act ("ADA") by
failing to accommodate her, denying to her equal terms of
employment and conditions of employment and ultimately
terminating her employment" (Prop. Amend. Compl. ¶ 78).
Defendants oppose this claim on the grounds of futility and argue
that it is (1) time barred because the complaint was not filed
within ninety days of plaintiff's receipt of her "right to sue
letter" from the EEOC, (2) time barred because plaintiff failed
to file her EEOC charge within 300 days of the alleged
discriminatory acts and (3) exceeds the scope of the allegations
made in the EEOC charge (Def. Memo at 3-9).  As explained below,
plaintiff's ADA claim is time barred because the alleged
discriminatory actions did not take place within the 300-day

_____

        [3]Defendants oppose, on the grounds of futility, all thirteen
claims found in the Prop. Amend. Compl. (Def. Memo).  At least
two of these thirteen causes of action (ADA and ADEA claims) are
plead in the original complaint and thus are not "proposed
amendments."  However, I will consider all arguments contained in
defendants' opposition because it would be inefficient for the
Court to require defendants to file a separate Rule 12(b)(6)
motion addressed to those claims contained in the original
complaint given that a Rule 15(a) futility argument is governed
by the same standard as Rule 12(b)(6).

period preceding the filing of the EEOC charge; I do not address the other arguments made by defendants.

"As a pre-requisite to filing a civil action, Title VII requires an individual seeking relief for employment discrimination to file a charge with the EEOC.  In jurisdictions, such as [New York,] the statute provides a 300 day limitations period for filing such charge." Payne v. MTA New York City Transit Auth., 349 F. Supp.2d 619, 624 (E.D.N.Y. 2004), citing 42 U.S.C. § 2000e-5(e)(1).[4]  "A party, therefore, must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002).

Plaintiff filed her EEOC charge on March 19, 2002 (Prop. Amend. Compl. ¶ 15).  In the narrative attached to her EEOC charge, plaintiff alleges:  (1) defendants failed to accommodate her disability after her request to her supervisor sometime in 1999 or 2000; (2) defendants were unwilling to allow a reasonable work accommodation after discussing the subject in a meeting with Labor Relations in the summer of 2000 and (3) plaintiff officially filed her request for FMLA leave on

---

[4]Cases interpreting 42 U.S.C. § 2000e-5 are directly relevant to plaintiff's ADA claim because the ADA's enforcement provisions expressly incorporate the provisions of § 2000e-5.  42 U.S.C. § 12117(a); Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 76-79 (2d Cir. 2003) (applying §§ 2000e-5 and 12117(a) interchangeably).

14

September 19, 2000 and was terminated on September 20, 2000 "due to medical complications from breast cancer, and my request to take a Family Medical Leave of Absence" (EEOC Charge annexed to Complaint).  Defendants argue that because this alleged conduct occurred before May 23, 2001, i.e. more than 300 days before March 19, 2002, plaintiff's ADA claim is time barred (Def. Memo at 5).  Plaintiff responds by arguing that this pre-May 23, 2001 conduct is, nevertheless, actionable under the "continuing violation" theory (Memorandum of Law in Support of Plaintiff's Reply to Defendants' Opposition to Her Motion for Leave to Amend the Complaint ("Pl. Reply"), Docket Item 26, at 3-4).

The continuing violation-doctrine delays the commencement of the statute of limitations period if the discriminatory conduct was part of a continuous "practice or policy" of discrimination.  See Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001); see also Branch v. Guilderland Cent. Sch. Dist., 239 F. Supp.2d 242, 253 (N.D.N.Y. 2003); Stalter v. Bd. of Coop. Educ. Servs., 235 F. Supp.2d 323, 332 (S.D.N.Y. 2002); Figueroa v. City of New York, 198 F. Supp.2d 555, 564 (S.D.N.Y. 2002), reconsideration granted on other grounds, 00 Civ. 7559 (SAS), 2002 WL 31163880.

The scope of the continuing violation doctrine was substantially restricted by the Supreme Court's decision in National Railroad Passenger Corp. v. Morgan, supra, 536 U.S. 101.

In that case the Supreme Court unanimously held that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp. v. Morgan, supra, 536 U.S. at 113. The Court went on to identify "termination, failure to promote, denial of transfer, or refusal to rehire" as examples of conduct that constituted a "discrete discriminatory act." 536 U.S. at 114. The only exception identified by the Court -- a hostile work environment, Nat'l R.R. Passenger Corp. v. Morgan, supra, 536 U.S. at 115 -- is inapplicable here because plaintiff alleges only discrete discriminatory acts.

As described above, plaintiff alleges that defendants failed to accommodate her disability, denied her equal terms and conditions of employment and terminated her based on events prior to May 23, 2001. Pursuant to the plain language of Morgan, plaintiff's termination constituted a "discrete discriminatory act." Nat'l R.R. Passenger Corp. v. Morgan, supra, 536 U.S. at 113. Similarly, a denial of equal terms and conditions of employment is a discrete discriminatory act, Norris v. New York City Hous. Auth., 02 Civ. 6933 (RJH), 2004 WL 1087600 at *5 n.6 (S.D.N.Y. May 14, 2004), citing Bailey v. Synthes, 295 F. Supp.2d 344, 354 (S.D.N.Y. 2003), as is a failure to accommodate, Fleming v. Verizon N.Y., Inc., 03 Civ. 5639 (WHP), 2005 WL 1492395 at *8 (S.D.N.Y. June 24, 2005), citing Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 134-35 (2d Cir. 2003).

Accordingly, plaintiff is precluded from asserting any pre-May 23, 2001 conduct by defendants as specific, compensable acts of discrimination.  Thus, plaintiff's claims regarding failure to accommodate, disparate treatment and termination pursuant to the ADA are time barred, and, therefore, cannot be asserted in the amended complaint.

E.   ADA Retaliation Claim

Plaintiff claims that, because she sought disability accommodations protected by the ADA, Mount Sinai retaliated against her by terminating her employment and refusing to process her STD and LTD claims (Prop. Amend. Compl. ¶ 82).  Defendants oppose this claim on the grounds of futility and argue that it (1) is time barred because the complaint was not filed within ninety days of plaintiff's receipt of her "right to sue letter," (2) is time barred because plaintiff failed to file her EEOC charge within 300 days of the alleged discriminatory acts, and (3) fails to state a claim because plaintiff cannot show a causal relationship between the protected activity and the adverse employment action (Def. Memo at 3-6, 9-10).

Defendants first argue that plaintiff did not file her complaint within ninety days of receiving her right to sue letter from the EEOC, and therefore her action is time barred. Plaintiff alleges that she received this letter on April 25, 2002

17

(Prop. Amend. Compl. ¶ 16).  Thus, for her action to be timely, plaintiff would have had to commence this action by July 24, 2002.  Defendants claim that because her suit was stamped "filed" on August 6, 2002, the claim is untimely.  Although it is true that the complaint was not stamped "filed" until August 6, 2002, defendants rely on the wrong standard in calculating the statute of limitations.  Because plaintiff was <u>pro se</u> when she commenced this action and her complaint was accompanied by an application, that was later granted, to proceed <u>in forma pauperis</u>, the complaint is considered "filed" on the date the Court's <u>Pro Se</u> Office <u>received</u> her complaint and <u>in forma pauperis</u> application, not the date it was accepted for filing by the Clerk of the Court.  <u>Toliver v. Sullivan County</u>, 841 F.2d 41, 42 (2d Cir. 1988) (per curiam) (holding <u>pro se</u> litigant's complaint was considered retroactively "filed" the date it is was received by the <u>Pro Se</u> Office, once the <u>in forma pauperis</u> application was granted and the complaint was stamped "filed").  Because the complaint was stamped "received" by the <u>Pro Se</u> Office on July 22, 2002 and the application to proceed <u>in forma pauperis</u> was eventually granted, the action was filed within the ninety-day period and is timely.

Defendants' second argument, that the claim lacks the necessary causal connection between protected activity and adverse action, is meritless because, as already discussed, it

18

merely disputes a fact alleged by plaintiff.  See Section III(C),
above.

        Defendants' third argument is that the ADA retaliation
claim is time barred because plaintiff failed to file her EEOC
charge within 300 days of the alleged discriminatory acts.  The
analysis regarding this argument is discussed in Section III(D),
above, and applies with equal force here.  Plaintiff was
terminated on September 20, 2000; she filed her charge with the
EEOC on March 19, 2002.  For the reasons discussed above,
plaintiff's termination was a discrete act that was not timely
raised with the EEOC.  Thus, to the extent the ADA retaliation
claim is based on plaintiff's termination, it is time barred.

        Plaintiff also alleges that defendants' retaliatory
actions included "refusing to process her STD and LTD claims"
(Prop. Amend. Compl. ¶ 82).  In the narrative attached to her
EEOC Charge, plaintiff alleged that defendants (1) provided
conflicting information or were unresponsive and (2) changed her
termination date retroactively, effectively nullifying her
eligibility for benefits, in late 2001 (EEOC Charge annexed to
Complaint).  Since both of these allegations relate to events
that occurred after May 23, 2001, they are within the 300-day
limitations period.  Accordingly, to the extent the ADA

retaliation claim is based on these allegations, it is not time
barred.[5]

        Thus, plaintiff's motion to add an ADA retaliation
claim is granted to the extent it alleges that defendants
retaliated against plaintiff by failing to process for STD and
LTD claims.  In all other respects, plainitff's motion to add an
ADA retaliation claim is denied.

    F.  ADEA Claim

        Plaintiff also claims that defendants discriminated
against her because of her age by "denying to her equal terms and
conditions of employment and ultimately terminating her
employment" (Prop. Amend. Compl. ¶ 88).  Defendants raise the
same opposition here as they did against plaintiff's first ADA
claim, namely, that the claim is (1) time barred because the
complaint was not filed within ninety days of plaintiff's receipt
of her "right to sue letter," (2) time barred because plaintiff
failed to file her EEOC charge within 300 days of the alleged

_____

[5]However, it is unclear if these allegations are in fact the
basis of the retaliation claim regarding STD and LTD benefits.
It seems likely that any retaliation by defendants regarding STD
benefits would have followed soon after her September 19, 2000
filing and before May 23, 2001.  If this were true, then a
retaliation claim based on such events would be time barred.
Similarly, it is unclear if the current retaliation claim
regarding refusal to process STD and LTD benefits is "within the
scope of the EEOC Charge."  Although defendants raised this
argument in opposition to the first ADA claim, they do not raise
it with respect to the ADA retaliation claim.

discriminatory acts and (3) beyond the scope of the allegations made in the EEOC charge (Def. Memo at 3-9).  Plaintiff's claim is time barred because the allegedly discriminatory actions did not take place within the 300-day period preceding the filing of the EEOC charge, and again, I need not address the two other arguments made by defendants.

Defendants again argue that plaintiff's claim is time barred because plaintiff failed to file her EEOC charge within 300 days of the alleged discriminatory acts.  Because the ADEA also requires a plaintiff to file a charge with the EEOC within 300 days, the analysis discussed Section III(D), above, applies here.  29 U.S.C. § 626(d)(2); see Brodsky v. City Univ., 56 F.3d 8, 10 (2d Cir. 1995) ("[B]efore filing a civil action, ADEA plaintiffs in deferral jurisdictions [such as New York] must file with the EEOC within 300 days . . . before expiration of the statute of limitations.").  Accordingly, any claim based on plaintiff's termination is time barred.  See Section III(D), above.

Similarly, plaintiff alleges that two younger employees had been allowed to a work a modified schedule and that she raised this issue to no avail in a Summer 2000 meeting with Labor Relations (Prop. Amend. Compl. ¶¶ 32, 34, 36-37, 40).  Again, assuming plaintiff's allegation are true, she alleges only a discrete act of disparate treatment that does not constitute a

continuing violation.  See Fleming v. Verizon N.Y., Inc., supra,
2005 WL 1492395 at *8, citing Elmenayer v. ABF Freight Sys.,
Inc., supra, 318 F.3d at 134-35.  Since this discrete act
occurred outside the 300-day period preceding the filing of the
EEOC charge on March 19, 2002, it is also time barred.

        Thus, plaintiff's claims regarding unequal terms and
conditions of employment and termination pursuant to the ADEA are
time barred and cannot be asserted in the Amended Complaint.


    G.   NYSHRL and NYCHRL Claims

        Defendants' only argument concerning plaintiff's
proposed NYSHRL and NYCHRL claims is that the Court lacks
supplemental jurisdiction of these state law claims because all
of plaintiff's federal claims should be dismissed (Def. Memo. at
24).  Since plaintiff's federal claims are not being dismissed in
their entirety, plaintiff can amend her complaint to assert
claims under the NYSHRL and the NYCHRL to the extent such claims
parallel surviving federal claims.


    H.   ERISA Breach of
         Fiduciary Duty

        Plaintiff claims that defendants breached their
fiduciary duty to plaintiff by "failing to properly administer
benefits under the terms of the Plan" (Prop. Amend. Compl. ¶
107).  Specifically, plaintiff alleges that defendants (1)

refused to process her LTD claim for nearly two years, (2)
"altered Plaintiff's purported last date of employment three
times," (3) provided Unum with an incorrect last date of active
employment and took unreasonably long to correct this error and
(4) only agreed to process plaintiff's LTD claim after "it
believed it had successfully coerced Plaintiff into agreeing to a
small settlement of her employment law claims against Mount
Sinai" (Prop. Amend. Compl. ¶ 108).  Defendants oppose this claim
on the grounds of futility, arguing that:  (1) plaintiff failed
to exhaust her administrative remedies, (2) plaintiff fails to
seek equitable relief, (3) defendants are not fiduciaries under
the meaning of ERISA and (4) plaintiff relies on inadmissable
evidence from settlement conferences (Def. Memo. at 13-17).
Since defendants' first and third arguments are based on their
disagreement with plaintiff's factual allegations, these
arguments are rejected for the reasons set forth in Section
III(C), above.  My discussion here is, therefore, limited to
plaintiff's second and fourth argument.

        Defendants' second argument is that plaintiff's breach
of fiduciary duty claim is futile because it does not seek
equitable relief.  Plaintiff claims that she is "entitled to
'equitable relief'" under ERISA § 502(a)(3)(B), 29 U.S.C. §
1132(a)(3)(B), "amounting to the LTD benefits of which Defendant

[sic] have deprived Plaintiff to date" (Prop. Amend. Compl. ¶
121).

Section 502(a)(3)(B) of ERISA states that a plan
participant, beneficiary or fiduciary may bring a civil action
"to obtain other appropriate equitable relief (i) to redress such
violations or (ii) to enforce any provisions of this subchapter
or the terms of the plan."  (Emphasis added).  "Equitable relief"
in § 502(a)(3) does not make available any type of relief.
Instead, it is limited to "'those categories of relief that were
typically available in equity.'"  Great-West Life & Annuity Ins.
Co. v. Knudson, 534 U.S. 204, 209-10 (2002) (emphasis in
original), quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 256
(1993).  "[D]etermining whether a cause of action is 'legal or
equitable in a particular case (and hence whether it is
authorized by § 502(a)(3)) remains dependent on the nature of the
relief sought.'"  Mead v. Arthur Andersen, LLP, 309 F. Supp.2d
596, 599 (S.D.N.Y. 2004), quoting Great-West Life & Annuity Ins.
Co. v. Knudson, supra, 534 U.S. at 215.  Where a plaintiff is
"seeking legal relief -- the imposition of personal liability on
[a defendant] for a contractual obligation to pay money -- §
502(a)(3) does not authorize [the] action."  Great-West Life &
Annuity Ins. Co. v. Knudson, supra, 534 U.S. at 221; see Nechis
v. Oxford Health Plans, Inc., 421 F.3d 96, 103-04 (2d Cir. 2005)
(affirming dismissal of § 502(a)(3) claim because the "requested

relief [was] nakedly contractual"); Klecher v. Metro. Life Ins.
Co., 331 F. Supp.2d 279, 286-89 (S.D.N.Y. 2004) (denying motion
to amend complaint to add claim under § 502(a)(3) because
plaintiff was merely seeking an "'ordinary' denial of benefits
claim for which § [502](a)(1)(B) provides a remedy" and
plaintiff's only equitable claim to "remand" to the insurance
company to determine whether plaintiff was disabled was futile
because her action already sought a determination by the court of
whether she was disabled) (citations omitted).

        Here, plaintiff does not elaborate on the type of
equitable relief she is seeking.  The crux of plaintiff's claim
is the recovery of disability benefits, i.e. money, denied to her
under the Plan.  The plaintiff appears to seek "legal relief --
the imposition of personal liability on [defendants] for a
contractual obligation to pay money."  Great-West Life & Annuity
Ins. Co. v. Knudson, supra, 534 U.S. at 221.  The only "equitable
relief," as the Supreme Court defined it in Great-West, she could
even remotely claim on these pleadings is for equitable
restitution.  Equitable restitution, however, requires a
specifically identifiable res.  Interpreting Great-West, the
Court of Appeals for the Second Circuit recently stated that
permissible forms of equitable restitution, as opposed to legal
restitution, available under § 502(a)(3) include constructive
trusts or equitable liens.  "[A] constructive trust or equitable

25

lien is imposed when, 'in the eyes of equity,' a plaintiff is 'the true owner' of funds or property, and the 'money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced back to particular funds or property in the defendant's possession.'" Nechis v. Oxford Health Plans, Inc., supra, 421 F.3d at 103 (second alteration in original), quoting Great-West Life & Annuity Ins. Co. v. Knudson, supra, 534 U.S. at 213.  Even though the plaintiff in Nechis sought restitution, the Second Circuit affirmed the district court's decision to dismiss the claim because the plaintiff could not show that the defendant was under an obligation to segregate or that it did in fact segregate the funds he was seeking into a separate account. Nechis v. Oxford Health Plans, Inc., supra, 421 F.3d at 103-04. Likewise, plaintiff here does not claim that she is the true owner of segregated, identifiable funds in defendants' possession.  Furthermore, besides claiming she is entitled to "equitable relief," plaintiff does not appear to be seeking a remedy that is truly restitutionary in nature because she does not claim that a constructive trust or lien should be imposed on defendants.  Thus, as it stands her claim appears to be one for a legal remedy, not for "equitable relief" under § 502(a)(3)(B).[6]

---

[6]To support her § 502(a)(3) claim, plaintiff in her reply relies on In re Enron Corp. Securities, Derivative & ERISA Litigation, 284 F. Supp.2d 511 (S.D. Tex. 2003).  The plaintiffs in Enron did not assert a § 502(a)(1) claim for denied plan
(continued...)

See Nechis v. Oxford Health Plans, Inc., supra, 421 F.3d at 104
("We decline this invitation to perceive equitable clothing where
the requested relief is nakedly contractual.").

Furthermore, the relief plaintiff seeks under §
502(a)(3)(B) appears nearly identical to the relief she seeks in
her claim under § 502(a)(1)(B) (Prop. Amend. Compl. ¶ 126).
Since Great-West, some courts in this District have found that
when a § 502(a)(3) claim is duplicative of a § 502(a)(1) claim,
the § 502(a)(3) claim should be dismissed, while others have
allowed the two claims to go forward.  Compare Klecher v. Metro.
Life Ins. Co., supra, 331 F. Supp.2d at 288 (dismissing as futile
plaintiff's § 502(a)(3) claim because it merely constituted an
effort to repackage her unsuccessful §§ 502(a)(1)(B) and
502(a)(2) claims), Mead v. Arthur Anderen, LLP, supra, 309 F.

---

[6](...continued)
benefits "because they agree[d] that the plan is clear and
unambiguous, they [were] not contending that Defendants did not
interpret it properly, and they [were] not seeking to recover
benefits under the terms of the plan."  In re Enron, supra, 284
F. Supp.2d at 678.  Instead, plaintiffs were "seeking 'monetary
make-whole relief' from Committee Members' personal assets."  In
re Enron, supra, 284 F. Supp.2d at 679.  The plaintiffs
purposefully dismissed the plan, the "normal[] defendant in a
suit for payable benefits under the terms of a plan," and
"consciously framed their claim under § 502(a)(3) as a breach of
fiduciary duty."  In re Enron, supra, 284 F. Supp.2d at 678
(citations omitted).  The court did not dismiss their claim, but
noted, in dicta, that their equitable relief would be limited to
restitution as it is defined in Great-West and that were they to
proceed on the merits, the plaintiffs faced a "daunting task."
In re Enron, supra, 284 F. Supp.2d at 679.  Plaintiff's claim
here is distinguishable because she seeks to add the Plan as a
defendant and is attempting to recover plan benefits.

Supp.2d at 598 ("[I]t is 'appropriate' to allow plaintiffs to include a § 502(a)(3) claim which may provide distinct relief from a § 502(a)(1) claim; it is inappropriate to include a § 502(a)(3) claim which, as here, merely duplicates the § 502(a)(1) claim.") (citation omitted) and Rubio v. Chock Full O'Nuts Corp., 254 F. Supp.2d 413, 432 (S.D.N.Y. 2003) (granting summary judgment dismissing § 502(a)(3) claim as duplicative of § 502(a)(1) claim); with Chapro v. SSR Realty Advisors, Inc. Severance Plan, 351 F. Supp.2d 152, 156 (S.D.N.Y. 2004) (refusing to dismiss § 502(a)(3) claim duplicative of § 502(a)(1) claim "at [motion to dismiss] stage of the case"), Am. Med. Assoc. v. United Healthcare Corp., 00 Civ. 2800 (LMM)(GWG), 2002 WL 31413668 at *7 (S.D.N.Y. Oct. 23, 2002) ("It is not clear that by asserting the ERISA claims under §§ 502(a)(3) and 502(a)(1)(B) that plaintiffs are seeking the same relief.") (citation omitted) and Suozzo v. Bergreen, 00 Civ. 9649 (JGK), 2002 WL 1402316 at *5 (S.D.N.Y. June 27, 2002) (denying motion to dismiss § 502(a)(3) claim for "appropriate equitable relief" and allowing it and § 502(a)(1)(B) claims to "proceed in tandem at this stage") (citation omitted).  The only substantive difference between the relief sought in the two claims in this case is that the § 502(a)(3) claim seeks only past payments while the § 502(a)(1)(B) claim seeks past and future payments (Prop. Amend. Compl. ¶¶ 121, 126).  This makes the § 502(a)(1)(B) claim broader than the §

502(a)(3) claim because it seeks the relief sought under §

502(a)(3) and additional relief.  Although this is an early stage

of this proceeding, plaintiff has not shown in any way that her §

502(a)(3) claim is not duplicative of her § 502(a)(1)(B) claim.[7]

Because plaintiff does not appear to be entitled to any

equitable relief and has an alternative means of relief through a

duplicative § 502(a)(1)(B), her claim is futile and I deny her

---

[7]Plaintiff contends that her "request for relief encompassed
equitable relief" and cites to De Pace v. Matsushita Electric
Corp. of America, 257 F. Supp.2d 543 (E.D.N.Y. 2003) (Pl. Reply
at 10).  In De Pace, plaintiffs alleged that their former
employer fraudulently induced them to resign by giving them
misleading information concerning the pension benefits they could
expect.  De Pace v. Matsushita Elec. Corp. of Am., supra, 257 F.
Supp.2d at 546-47.  After a discussion of the impact of Great-
West on § 502(a)(3)(B) claims, the court in De Pace found that
"plaintiffs' request for 'other' relief" was broad enough to
encompass equitable relief for front pay and reformation, despite
dismissing their § 502(a)(3) claim for compensatory and punitive
damages.  De Pace v. Matsushita Elec. Corp. of Am., supra, 257 F.
Supp.2d at 565.  The equitable relief was available because the
plaintiffs could only recover if they were reinstated or if the
agreement they entered into with their former employer when they
resigned was reformed.   Thus, they were not seeking a legal
remedy.  The plaintiffs even conceded that they could not bring a
claim under § 502(a)(1)(B) because they were not entitled to any
additional benefits since they resigned.  Thus, they argued that
§ 502(a)(3)(B) was their only avenue of relief.  The court agreed
and denied the motion to dismiss.  De Pace v. Matsushita Elec.
Corp. of Am., supra, 257 F. Supp.2d at 565-67.  Unlike the
plaintiffs in De Pace, plaintiff here has alternative means of
relief through § 502(a)(1)(B) because she is seeking money
damages and does not appear to have similar claims for front pay
or reformation.

29

motion to add a claim for breach of fiduciary duty under ERISA to her complaint without prejudice.[8]

Although I need not address defendants' further arguments regarding plaintiff's breach of fiduciary duty claim, defendants assert their fourth argument -- that plaintiff improperly derived several allegations in the Proposed Amended Complaint from settlement conference discussions (Def. Memo. at 21) -- with respect to several claims, and I shall address it here.  The Proposed Amended Complaint does not, and need not, specifically state the bases for plaintiff's factual allegations. Since I am generally not permitted to go beyond the pleadings at this stage and the Proposed Amended Complaint itself does not state the source for plaintiff's factual allegations, defendants' argument, which is really addressed to the admissibility of evidence, is not a basis to deny plaintiff's motion to amend. Whether plaintiff can muster admissible evidence to support the claim is simply not material at this time.

_____

[8]I note that Fed.R.Civ.P. Rule 54(c) states "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."  Because a party will be granted the relief to which they are entitled regardless of their demand, assuming there is no default judgment, I fail to see the necessity of this amendment for relief.

I.  <u>Attorney's Fees</u>

    Plaintiff's final claim is for attorney's fees pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g) (Prop. Amend. Compl. ¶¶ 150-51).  Although defendants' preliminary statement in their Memorandum of Law contends that all of plaintiff's proposed amended claims are futile, defendants fail to address the claim for attorney's fees specifically (Def. Memo. at 2).  Since defendants have not stated a reason why I should deny plaintiff's motion to add a claim for attorney's fees, I decline to raise any arguments <u>sua</u> <u>sponte</u>.  Therefore, plaintiff's motion to add a claim for attorney's fees is granted.

IV.  <u>Conclusion</u>

    Accordingly, for the forgoing reasons, I grant plaintiff leave to amend her complaint to add defendants Unum and the Plan and substitute defendants The Mount Sinai Medical Center and The Mount Sinai Hospital for the original defendant, Mount Sinai/NYU Health, and to add claims for:  1) denial of FMLA benefits; 2) ADA retaliation to the extent it alleges that defendants retaliated against plaintiff by failing to process her STD and LTD claims; 3) failure to provide plaintiff notice of her COBRA benefits; 4) failure to pay benefits under ERISA; 5) interference with ERISA rights; 6) failure to provide the ERISA summary plan description and plan document; 7) retaliation for

31

exercising rights under ERISA; 8) violation of NYSHRL; 9)
violation of NYCHRL and 10) attorney's fees.  I deny plaintiff's
motion with respect to adding claims for 1) ADA employment
discrimination, 2) ADEA employment discrimination and 3) breach
of fiduciary duties under ERISA.  To the extent the ADA and ADEA
claims were raised in the original complaint, they are hereby
dismissed for the same reasons they cannot be added.

          Plaintiff is directed to serve her amended complaint
within ten (10) days of the date of this Order.

Dated:     New York, New York
           November 4, 2005

                                   SO ORDERED

                                   HENRY PITMAN
                                   United States Magistrate Judge

Copies mailed to:

Charles Joseph, Esq.
Julia Tomassetti, Esq.
Joseph & Herzfeld LLP
757 Third Avenue, Suite 2500
New York, New York 10017

Rory J. McEvoy, Esq.
Kirkpatrick & Lockhart LLP
599 Lexington Avenue
New York, New York 10022